UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:  J. W. JEFFERSON AND GENEVA JEFFERSON,          CASE NO. 04-17842
DEBTORS

OPINION

On consideration before the court is a motion to modify a confirmed Chapter 13 plan filed by the debtors, J. W. Jefferson and Geneva Jefferson, (Jeffersons); a response to said motion having been filed by Wells Fargo Financial Acceptance, (Wells Fargo); and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (B), (L), and (O).

II.

The Jeffersons' voluntary Chapter 13 bankruptcy petition was filed on December 8, 2004, and their Chapter 13 plan was thereafter confirmed on April 27, 2005. The plan includes the payment of the secured claim of G.E. Capital Auto Financial Services (G.E. Capital), which is collateralized by a lien on a 2000 Dodge Intrepid, as well as, the secured claim of Wells Fargo, which is collateralized by a lien on a 2000 Dodge Dakota pickup truck. One of the debtors, J. W. Jefferson, has become disabled post-confirmation, and, therefore, the debtors now cannot afford to make the plan payments as proposed. Consequently, because of this financial misfortune, they have filed the subject motion to modify their confirmed plan in order to surrender the

aforementioned vehicles to the respective creditors. In addition, the Jeffersons seek to reduce their plan payments by the amounts that were being paid to G.E. Capital and Wells Fargo. As further justification for this request, they assert that this reduction is necessary in order for them to save their home.

G.E. Capital did not file a response to the Jeffersons' motion, so, consequently, the Jeffersons will be permitted to surrender the 2000 Dodge Intrepid to G.E. Capital. If there is a deficiency after the vehicle is liquidated, it shall be treated as an unsecured claim. Wells Fargo did file a response which will be addressed by the court hereinbelow.

III.

Section 1329 of the Bankruptcy Code deals specifically with the modification of a Chapter 13 plan after confirmation. It provides as follows, to-wit:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments; or
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
> (c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

In a Sixth Circuit Court of Appeals decision, In re Nolan, 232 F.3d 528 (6th Cir. 2000), a Chapter 13 debtor filed a motion in the bankruptcy court to modify her plan post-confirmation in

2

order to surrender an automobile, securing a creditor's claim, and to reclassify the deficiency claim that she owed as an unsecured claim. The bankruptcy court initially permitted the modification, but the district court reversed. Id. at 529-30. The district court decision was affirmed by the Sixth Circuit which held as follows:

1. The Bankruptcy Code provision governing post-confirmation modification of a Chapter 13 plan only permits modification of the amount and timing of the payments, not the total amount of the claim.

2. The debtor cannot modify her plan by surrendering collateral to the secured creditor, having the creditor sell the collateral and apply the proceeds toward the claim, and then having any deficiency classified as an unsecured claim.

Id. at 535.

This decision specifically abrogated In re Jock, 95 B.R. 75 (Bankr. M.D. Tenn. 1989); In re Anderson, 153 B.R. 527 (Bankr. M.D. Tenn. 1993); In re Rimmer, 143 B.R. 871 (Bankr. W.D. Tenn. 1992); and In re Frost, 96 B.R. 804 (Bankr. S.D. Ohio 1989).

While there is still a split of authority on this particular subject, the Nolan court relied on five fundamental principals in support of its conclusion, to-wit:

1. Section 1329(a) does not expressly allow the debtor to alter, reduce or re-classify a previously allowed secured claim. Instead, §1329(a)(1) only affords the debtor a right to request alteration of the amount or timing of specific payments. A modification that reduces the claim of a secured creditor would add a claim to the class of unsecured creditors, a change prohibited by §1329(a).

2. The proposed modification would violate §1325(a)(5)(B), which mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed. Debtors seeking modification are attempting to bifurcate a claim

3

        that has already been classified as fully secured into a secured claim as measured by the collateral's depreciated value and an unsecured claim as measured by any unpaid deficiency.

3.     The proposed modification would contravene §1327(a), because a contrary interpretation postulates an unlikely Congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset.

4.     Only the debtor, trustee, and holders of unsecured claims are permitted to bring a motion to modify a plan pursuant to §1329(a). A contrary interpretation would create an inequitable situation where the secured creditor could not seek to reclassify its claim in the event that collateral appreciated, even though the debtor could revalue or reclassify the claim whenever the collateral depreciated.

5.     The language of §1329 does not expressly state that the plan may be modified to increase or reduce the amount of claims.

Nolan, 232 F.3d at 532-34. (citations omitted).

The Jock decision, which was abrogated by Nolan, took a more flexible approach to this issue. Judge Keith Lundin elected not to penalize the debtor who attempted to pay his debts through a Chapter 13 plan, but was unsuccessful. Significantly, the Jock court also required justification for the post-confirmation modification request. The relief would not be granted when the debtor could not show a reasonable cause for the change in circumstances.

The Sixth Circuit cited with approval In re Banks, 161 B.R. 375 (Bankr. S.D. Miss. 1993), a decision which denied the debtor's motion to modify the Chapter 13 plan post-confirmation, to-wit:

    Code §1329(a) basically authorized the amendment of a confirmed plan so as to change (1) the amount; or (2) the time for payments "on claims of a particular class provided for by the plan." The boldest and most frequent attempt by debtors to use the post-confirmation modification to alter the treatment of secured claims occurs when the collateral no longer appears to have a value which justifies full payment of the balance of the secured claim--in contrast with the composition percent being paid on unsecured claims. The collateral having lost its attractiveness, the debtor proposes an amendment to

4

the plan so as (1) to surrender the now unattractive collateral to the creditor; (2) to reduce the unpaid balance of the secured claim to reflect the now diminished value of the collateral; (3) to have that reduced secured balance satisfied by the surrender of the collateral; (4) to have the remaining balance of the secured claim converted to an unsecured claim; and (5) to have this balance of the claim satisfied by the 5%, 17%, or whatever percent payment provided for unsecured claims--all over the objection of the holder of the secured claim.

Banks, 161 B.R. at 377.

The factual underpinnings in the Banks decision are not quite as compelling as those in the case before this court. In her Chapter 13 plan, the debtor, Jacqueline Banks, initially proposed to treat the claim of Mercury Finance Company, which was secured by the debtor's vehicle, by paying the value of the vehicle plus the contract rate of interest. After confirmation, the vehicle experienced mechanical problems which would have been more expensive to repair than the actual value of the vehicle. Banks filed a motion to modify her confirmed plan which proposed the surrender of the now worthless vehicle to Mercury Finance, which, after liquidation, was to treat its deficiency claim as unsecured. Banks had already made arrangements to finance a replacement vehicle of "comparable vintage." The repayment of the "new" promissory note, which was to be secured by the replacement vehicle, would, for all practical purposes, have come from funds that were originally intended to repay the Mercury Finance claim.

Obviously, Nolan and Banks very narrowly construed §1329, but neither decision addressed the effects of §502(j) of the Bankruptcy Code which provides as follows:

> (j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional

5

payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

One of the first post-Nolan decisions, which considered the effects of §502(j), was In re Zieder, 263 B.R. 114 (Bankr. D. Ariz. 2001). In Zieder, the debtors, after their Chapter 13 plan had been confirmed, surrendered a vehicle to Ford Motor Credit, which then liquidated the vehicle securing its claim. The debtors then moved to modify their Chapter 13 plan to eliminate any remaining payments to Ford Motor Credit. The bankruptcy court made the following conclusions:

1. The creditor's liquidation of the motor vehicle, securing its claim, following the voluntary surrender by the debtors after their Chapter 13 plan had been confirmed constituted adequate "cause" for reconsideration of the creditor's allowed secured claim.

2. The debtors' remaining scheduled payments on the creditor's secured claim would be reduced to zero.

3. The creditor's remaining deficiency claim would not be given an administrative expense priority.

Zeider, 263 B.R. 116-19.

The court pointed out that the only circuit authority addressing this issue was the Sixth Circuit's Nolan decision.

The Zieder court recognized that §1329(a) deals only with the modification of "payments on claims" and "the amount of the distribution to a creditor," and, therefore, does not expressly

refer to the modification or reclassification of the claims on which such payments are made. It added, however, that §502(j) provides that "[A] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." Id. at page 117. The court then concluded, that "[b]ecause the modification of the amount of the secured claim occurs pursuant to §§502(j) and 506(a), Nolan's conclusion that §1329(a) does not permit claim modifications or claim reclassifications, as distinguished from payment modifications, has no significance even if correct." Id. at page118.

The Zieder court found that the burden was on the secured creditor, to the extent that plan payments were insufficient to cover normal depreciation in its collateral, to object to the confirmation of the Chapter 13 plan. In addition, the court stated that if depreciation in the creditor's collateral exceeded the debtors' payments under the confirmed Chapter 13 plan, and this was due to some fault of the debtors, such as their failure to properly maintain the collateral, the creditor would have a basis to object to the modified plan proposed by the debtors. Such an objection could raise the debtors' lack of good faith. Id. at 119.

Another very significant opinion dealing with this issue is found in In re Miller, No. 99-81339, 2002 WL 31115656, at *4-*6 (Bankr. M.D.N.C. Apr. 19, 2002) (unpublished). In Miller, the court concluded that §1329(a) of the Bankruptcy Code does not expressly support a post confirmation modification which proposes to surrender collateral and reclassify the deficiency as an unsecured claim. However, the court held that it could reconsider a claim under §502(j) when the collateral is surrendered in good faith and, after reconsideration, the lender is entitled to an administrative expense claim to the extent a deficiency is caused by depreciation in excess of the plan payments previously made. Eighteen months after confirmation, the Millers moved to

7

surrender a Freightliner tractor no longer needed in their trucking business. The court found that the modification of a plan in order to reclassify a secured claim does not fall within the scope of §1329(a) standing alone; however, a claim may be reconsidered pursuant to §502(j) for cause. The court was not persuaded that Congress intended to allow a debtor to use §1329 to essentially revalue collateral that had depreciated while the debtor had the benefit of possession. In order to accomplish both the modification of the plan and the reclassification of the creditor's claim, the debtors' circumstances must satisfy both the good faith requirement of §1329 and the equitable requirement of §502(j). Because the depreciation of the Freightliner was not a result of abuse or neglect by the debtors, the court determined that the debtors had proposed the modification in good faith, and that the equities of the case justified the reconsideration of the claim.

At the time the Millers filed their bankruptcy petition, the Freightliner had a value of $68,500.00. During the course of the plan, the secured creditor, Associates, was paid $38,785.13. The parties stipulated that, over this same period of time, the vehicle had depreciated in the sum of $46,550.00. Since the plan did not adequately protect Associates, after it liquidated the vehicle, it was granted, as a part of the modification, an administrative expense claim pursuant to §507(b), resulting from the failure of the adequate protection, in the sum of $7,764.87. Id. at *6.

In In re Hernandez, 282 B.R. 200 (Bankr. S.D. Tex. 2002), the court concluded that the debtors could modify their Chapter 13 plan after confirmation to surrender a pickup truck in satisfaction of the allowed secured claim because the debtors could no longer afford both their house payment and their truck payment. The court stated that §1325 explicitly permits surrender of collateral in satisfaction of secured claims, while §1329(a)(3) allows a modification to change the method of payment. The decision was premised on §502(j) which allows reconsideration of

the claim according to the equities of the case. The court found that even if the creditor's objection was sustained that the creditor would not be paid any more on its secured claim. The debtors just did not have enough income. If the entire amount due on the secured claim under the original plan had to paid, then the plan was not feasible, and the case would have to be converted or dismissed. The court stated that, "[t]o hold that the Debtors cannot surrender the pickup truck in satisfaction of Household's secured claim is to hold that Mr. and Mrs. Hernandez cannot keep their house because they cannot pay for their car. This Court does not see that rule in the statute." Id. at page 208.

The court in In re Knappen, 281 B.R. 714 (Bankr. D.N.M. 2002), determined that a Chapter 13 plan could be modified after confirmation to reduce a secured claim to zero when the debtor defaults in payments and the car lender repossesses and disposes of the car. The court expressly rejected the Nolan decision and offered the following comments: "The language of §1329(a)(1) of the Code explicitly allows the debtor to 'reduce the amount of payments on claims of a particular class.' Since each secured claim is generally treated as a separate class. . .reducing to nothing the amount of payments on Ford's secured claim fits within the language of the statute." Id. at page 717. "[Section] 1329(a)(3) allows the Debtor to 'alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.' Ford's repossession and sale of the vehicle and application of the sales proceeds to the debt was not provided for in the plan." Id. "The express language of §1329(a) does not preclude application of §502(j)." Id. at page 718. "[T]he requirement that the modification be proposed in good faith, §1325(a)(3), is particularly relevant. For example, were the debtor to fail to maintain insurance

9

on a vehicle, and then lose the value of the collateral for that reason, or were the debtor to fail to reasonably care for the collateral, such as periodically changing the oil in the vehicle with a resultant loss of value, the motion to modify would probably be denied." Id. at page 720.

Other courts have embraced the Nolan decision and have specifically rejected the use of §502(j). In In re Coffman, 271 B.R. 492 (Bankr. N.D. Tex. 2002), the court found that a Chapter 13 debtor could not modify a Chapter 13 plan to surrender a car that failed mechanically eighteen months after confirmation. The court offered the following comments: "As noted by the Sixth Circuit in In re Nolan, section 1329(a) does not expressly permit a modification that reclassifies or changes the nature of a claim. . . [S]ection 502(j), as well as the cases that have interpreted it, address the allowance or disallowance of a claim, not the reclassification of a claim." Id. at page 496 - 97. "[E]ven assuming that section 502(j) review of a claim is available postconfirmation, and further assuming that In re Zieder correctly holds that section 502(j) applies. . . . the question still remains whether the court should allow such a reclassification pursuant to section 502(j)." Id. at page 497. "Courts, including the Fifth Circuit, have likened the 'cause' standard found in section 502(j) with the substantive requirements of Bankruptcy Rule 9024 and Rule 60(b) of the Federal Rules of Civil Procedure." Id. at page 498. " [T]he Coffmans seek a reclassification of ACFCU's claim largely because it is no longer convenient for the Coffmans to keep the car. This does not warrant Rule 60(b) relief." Id.

See also, In re Jackson, 280 B.R. 703 (Bankr. S.D. Ala. 2001) and In re Barclay, 276 B.R. 276 (Bankr. N.D. Ala. 2001).

10

IV.

Section 502(j) is clear and unambiguous. It states that a claim that has been allowed may be reconsidered for cause, and that a reconsidered claim may be allowed according to the equities of the case. It certainly does not prohibit reclassification. As mentioned hereinabove, this section was not addressed by either <u>Nolan</u> or <u>Banks</u>. At the hearing on the Jeffersons' motion, the attorney appearing for Wells Fargo candidly acknowledged that this proceeding did not involve a question of whether the Jeffersons were acting in good faith. Mr. Jefferson has sustained a disability post-confirmation which has resulted in diminished income. In a scenario very similar to that found in the <u>Hernandez</u> case, the Jeffersons will likely lose their home if they are unable to surrender these vehicles. In this same context, if the plan cannot be modified post-confirmation, considering the reduction in income to fund the plan, the bankruptcy case will likely be dismissed or converted. Wells Fargo would then recover its collateral, but nothing more. Strictly prohibiting a modification under these factual circumstances could not have been the intent of Congress, because then both §502(j) and §1329 would be rendered meaningless. Post-confirmation modification and claim reconsideration, when justified by the equities of the case, are expressly allowed by these statutes.

Since there is no question but that the Jeffersons are acting in good faith, this court adopts the reasoning set forth in the <u>Miller</u> decision. Wells Fargo will be permitted to recover and liquidate in a commercially reasonable manner the collateral securing its claim. If the depreciation to the vehicle between the date of confirmation and the date of liquidation exceeds the total amount paid by the Jeffersons to Wells Fargo through their Chapter 13 plan, then the excess depreciation should be given an administrative expense priority pursuant to §507(b) of the

Bankruptcy Code as if it were failed adequate protection. The parties shall report back to the court following the liquidation of the vehicle so that this amount may be properly included in the modified plan.

A separate order will be entered consistent with this opinion.

This the 14th day of June, 2006.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE